# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SUZIE'S BREWERY COMPANY**, | Case No. 3:21-cv-178-SI |
| Plaintiff, | **TEMPORARY RESTRAINING ORDER** |
| v. | |
| **ANHEUSER-BUSCH COMPANIES, LLC and ANHEUSER-BUSCH INBEV WORLDWIDE, INC.**, | |
| Defendants. | |

Daniel C. Peterson and Amber A. Beyer, Cosgrave Vergeer Kester llp, 900 SW Fifth Avenue, 24th Floor, Portland, OR 97204. Of Attorneys for Plaintiff.

James F. Bennett, Dowd Bennett llp, 7733 Forsyth Boulevard, Suite 1900, St. Louis, MO 63105; and Shannon Armstrong, Holland & Knight llp, 601 SW Second Avenue, Suite 1800, Portland, OR 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Truth matters. Whether the context is politics, science, or commercial advertising, dishonesty has consequences. Under the federal law known as the Lanham Act, a court may enjoin false statements made in commercial advertising when those statements harm, or likely to harm, a competitor.

PAGE 1 – TEMPORARY RESTRAINING ORDER

The United States Department of Agriculture (USDA) administers the National Organic Program. Under this national certification program, businesses that meet specified national standards may display the "USDA Organic" seal on their qualifying products. Those businesses also may represent in their advertising that those products have received national USDA organic certification.

Anheuser-Busch makes Michelob ULTRA Hard Seltzer, which has earned USDA organic certification. Anheuser-Busch sells Michelob ULTRA Hard Seltzer in all states except Utah. In addition, Anheuser Busch knows that a competing manufacturer, Suzie's Brewery, also makes and sells, albeit only in a half-dozen states, hard seltzer that similarly has earned USDA organic certification. Indeed, Suzie's Brewery received its USDA organic certification for hard seltzer before Anheuser-Busch received its USDA organic certification for Michelob ULTRA Hard Seltzer.

The question presented in this lawsuit is whether, based on these facts, it is truthful or deceptive for Anheuser-Busch to advertise Michelob ULTRA Hard Seltzer as "the only" or "the first" "national USDA certified organic hard seltzer." For the reasons explained below, the Court finds that Anheuser-Busch's challenged statements are not truthful; they are false and deceptive. Accordingly, the Court grants Plaintiff's motion for a temporary restraining order, enjoining Anheuser-Busch from continuing to advertise the false and deceptive claim that Michelob ULTRA Hard Seltzer is "the only" or "the first" "national USDA certified organic hard seltzer," or words to that effect. Anheuser-Busch may, however, continue to advertise, for as long as it remains truthful, that Michelob ULTRA Hard Seltzer is "the only" or "the first" USDA certified organic hard seltzers that are distributed nationally.

## STANDARDS

In deciding whether to grant a motion for temporary restraining order (TRO), courts look to substantially the same factors that apply to a court's decision on whether to issue a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction generally must show that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in favor of the plaintiff; and (4) that an injunction is in the public interest. *Id.* at 20 (rejecting the Ninth Circuit's earlier rule that the mere "possibility" of irreparable harm, as opposed to its likelihood, was sufficient, in some circumstances, to justify a preliminary injunction).

The Supreme Court's decision in *Winter*, however, did not disturb the Ninth Circuit's alternative "serious questions" test. *See All. for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131-32 (9th Cir. 2011). Under this test, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132. Thus, a preliminary injunction may be granted "if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012).

In addition, a TRO is necessarily of a shorter and more limited duration than a preliminary injunction.[1] Thus, the application of the relevant factors may differ, depending on

---

[1] The duration of a TRO issued *without* notice may not exceed 14 days but may be extended by a court once for an additional 14 days for good cause, provided that the reasons for

whether the court is considering a TRO or a preliminary injunction.[2] Indeed, the two factors most likely to be affected by whether the motion at issue is for a TRO or a preliminary injunction are the "balancing of the equities among the parties" and "the public interest." Finally, "[d]ue to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings." *Herb Reed Enters., LLC v. Florida Entmt. Mgmt., Inc*., 736 F.3d 1239, 1250 n.5 (9th Cir. 2013); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).

## BACKGROUND

**A.  False Advertising Claims Under § 43(a)(1)(B) of the Lanham Act**

The Trademark Act of 1946, 15 U.S.C. §§ 1051-1141n (the Lanham Act), provides for a national system of trademark registration and protection. A portion of the Lanham Act, specifically § 43(a)(1), codified at 15 U.S.C. § 1125(a)(1), also protects competitors from false advertising. *See POM Wonderful LLC v. Coca-Cola Co*., 573 U.S. 102, 107 (2014) ("The Lanham Act creates a cause of action for unfair competition through misleading advertising or

---

the extension are entered in the record. Fed. R. Civ. P. 65(b)(2). When a TRO is issued with notice and after a hearing, however, the 14-day limit for TROs issued without notice does not apply. *See Pac. Kidney & Hypertension, LLC v. Kassakian*, 156 F. Supp. 3d 1219, 1222 n.1 (D. Or. 2016), citing *Horn Abbot Ltd. v. Sarsaparilla Ltd*., 601 F. Supp. 360, 368 n.12 (N.D. Ill. 1984). Nevertheless, absent consent of the parties, "[a] court may not extend a 'TRO' indefinitely, even upon notice and a hearing." *Id*. Accordingly, unless the parties agree otherwise, a court should schedule a preliminary injunction hearing to occur not later than 28 days after the date that the court first issues a TRO.

[2] A preliminary injunction also is of limited duration because it may not extend beyond the life of the lawsuit. That is the role of a permanent injunction, which a court may enter as part of a final judgment, when appropriate. A preliminary injunction, however, may last for months, if not years, while the lawsuit progresses towards its conclusion. *See Pac. Kidney*, 156 F. Supp. 3d at 1222 n.2.

labeling. Though in the end consumers also benefit from the Act's proper enforcement, the cause

of action is for competitors, not consumers."). Section 43(a)(1) provides in relevant part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, *or false or misleading representation of fact*, which—
>
>     \*   \*   \*
>
>     (B)    in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1) (emphasis added).

As explained by the Ninth Circuit, the following are the five elements of a claim of false

advertising under § 43(a)(1) of the Lanham Act:

> (1)    a false statement of fact by the defendant in a commercial advertisement about its own or another's product;
>
> (2)    the statement actually deceived or has the tendency to deceive a substantial segment of its audience;
>
> (3)    the deception is material, in that it is likely to influence the purchasing decision;
>
> (4)    the defendant caused its false statement to enter interstate commerce; and
>
> (5)    the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). "To demonstrate

falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was

literally false, either on its face or by necessary implication, or that the statement was literally

PAGE 5 – TEMPORARY RESTRAINING ORDER

true but likely to mislead or confuse consumers." *Id*. Further, "[w]hen evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context." *Id*. In addition, "[e]ven if an advertisement is not literally false, relief is available under Lanham Act § 43(a) if it can be shown that the advertisement has misled, confused, or deceived the consuming public." *Id*. at 1140.

When considering a claim of false advertising under the Lanham Act, a court should determine whether the advertisement at issue is: (1) literally false on its face; (2) literally false by necessary implication; or (3) not literally false but still likely to mislead, confuse, or deceive consumers. There are two types of advertisements that can be literally false: those that are facially false and those that are false by necessary implication. As explained by the Second Circuit, "[w]hen an advertisement is shown to be literally or facially false, consumer deception is presumed, and the court may grant relief without reference to the advertisement's actual impact on the buying public." *Time Warner Cable, Inc. v. DIRECTV, Inc*., 497 F.3d 144, 153 (2d Cir. 2007) (simplified).

Further, under the false-by-necessary-implication doctrine, "[i]f the words or images, considered in context, necessarily imply a false message, the advertisement is literally false[,] and no extrinsic evidence of consumer confusion is required." *Id*. at 158. Only an unambiguous message, however, can be literally false. *Id*. "Therefore, if the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." *Id*.

Finally, an advertisement may be actionable under § 43 of the Lanham Act when "a plaintiff can show that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." *Id*. at 153. An advertisement that is not literally false, however, is not entitled to the presumption of consumer deception.

**B.  The USDA's National Organic Program**

In 1990, Congress enacted the Organic Foods Production Act (OFPA), 7 U.S.C. §§ 6501,

*et seq*. One of the purposes of that law was "to establish *national standards* governing the

marketing of certain agricultural products as organically produced products." 7 U.S.C. § 6501(1)

(emphasis added). As explained by the USDA:

> The Organic Foods Production Act (OFPA), enacted under Title 21
> of the 1990 Farm Bill, served to establish *uniform national*
> *standards* for the production and handling of foods labeled as
> "organic." The Act authorized a new USDA *National* Organic
> Program (NOP) to set *national* standards for the production,
> handling, and processing of organically grown agricultural
> products. In addition, the Program oversees mandatory
> certification of organic production. The Act also established the
> *National* Organic Standards Board (NOSB) which advises the
> Secretary of Agriculture in setting the standards upon which the
> NOP is based. Producers who meet standards set by the NOP may
> label their products as "USDA Certified Organic."[3]

The National Organic Program is part of the USDA's Agricultural Marketing Service.

"The National Organic Program . . . has regulatory oversight responsibilities for the USDA

organic standards and the accreditation of organic certifying agents. The National Organic

Program also has authority to take appropriate legal action to enforce the organic standards and

thus protect the integrity of the USDA organic standards, from farm to market, around the

world."[4] The OFPA also established the National Organic Standards Board, whose mission is "to

assist in the development of standards for substances to be used in organic production and to

---

[3] Organic Production/Organic Food: Information Access Tools, https://www.nal.
usda.gov/afsic/organic-productionorganic-food-information-access-tools (last visited February 6,
2021) (emphasis added).

[4] About the National Organic Program, https://www.ams.usda.gov/publications/content/
about-national-organic-program (last visited February 6, 2021).

advise the Secretary on any other aspects of the implementation of this chapter." 7 U.S.C. §
6518(a); *see also* ECF 21 (Decl. of D. Peterson), Exs. 1 and 2.

The word "national" appears prominently throughout OFPA. From the description of one
of its purposes as establishing "national standards," to the official name of the program itself (the
"National Organic Program"), to the name of the advisory board (the "National Organic
Standards Board"), the word "national" is consistently associated with the federal program that
governs any mention, use, or display of the official USDA organic seal or label. Further, the
word "national" always immediately precedes the word "organic" in all official references to the
USDA's National Organic Program.[5]

## C. The Parties

### 1. Plaintiff

Plaintiff Suzie's Brewery Company is a small, family-owned business based in
Pendleton, Oregon. Before starting Suzie's Brewery, the Barhyte family had long been involved
in other food and beverage industry businesses. Chris Barhyte is the founder and CEO of Suzie's
Brewery. In the fall of 2019, Mr. Barhyte saw the potential and appeal for hard seltzers.[6]
Through Suzie's Organic's brand, the Barhyte family learned the importance of organic options
to consumers in the "better for you" and health-conscious lifestyle market. Although there were

---

[5] "Historically, organic foods faced market difficulties because of a proliferation of
standards, which led to consumer suspicion that the organic label was meaningless. Currently,
products not meeting USDA standards, but meeting some other definition of 'organic,' cannot be
labeled organic." Rebecca Tushnet, *It Depends on What the Meaning of "False" Is: Falsity and
Misleadingness in Commercial Speech Doctrine*, 41 Loy. L.A. L. Rev. 227, 241 (2007)
(footnotes omitted).

[6] When modifying the name of a beverage, the adjective "hard" means that the drink
contains alcohol and is an "adult beverage."

organic non-alcoholic beverages available in 2019, Mr. Barhyte saw a significant growth opportunity for organic hard beverages.

Suzie's Brewery invested capital and delayed the release of its products to have its organic plant certified through the USDA's National Organic Program. Suzie's Brewery was certified under that program on June 1, 2020. Within two months, on July 21, 2020, Suzie's Brewery brought to market Suzie's Organic Hard Seltzer, a registered trademark. Suzie's Organic Hard Seltzer currently is distributed in six states—Oregon, Washington, Idaho, Wyoming, Colorado, and New Jersey. According to Mr. Barhyte, Suzie's Brewery soon plans to expand distribution to other states.

### 2. Defendants

Michelob ULTRA is a brand of Anheuser-Busch, LLC, which is a subsidiary of Defendant Anheuser-Busch Companies, LLC, which is a subsidiary of Defendant Anheuser-Busch InBev Worldwide, Inc.[7] Anheuser-Busch launched Michelob ULTRA in 2002, and since then it has been one of Anheuser-Busch's fastest growing brands. Michelob ULTRA has always been marketed toward health-conscious beer drinkers. Building on the success of the Michelob ULTRA beer, in recent years, Anheuser-Busch has begun releasing other products under the Michelob ULTRA brand that would be appealing to health-conscious beer drinkers. For example, Anheuser-Busch released Michelob ULTRA Amber Max, which is a light beer that has been specially crafted to remove gluten. Anheuser-Busch also released Michelob ULTRA Pure Gold, which was the first nationally distributed light beer to be certified organic by the USDA. The Michelob ULTRA family of products has moved beyond traditional beers with the launch of Michelob ULTRA Infusions, which is a light beer made with lime peels and prickly pear cactus.

---

[7] The Court collectively refers to these entities as "Anheuser-Busch."

In January 2021, Anheuser-Busch began selling Michelob ULTRA Organic Seltzers, a hard seltzer product. Michelob ULTRA Seltzers were certified as organic on August 19, 2020. Michelob ULTRA Seltzers were not Anheuser-Busch's first entry into the hard seltzer category. Anheuser-Busch has other hard seltzer products that are produced by either Anheuser-Busch or its subsidiaries. Anheuser-Busch first entered the hard seltzer category in 2016 with its acquisition of SpikedSeltzer, which is now called BON V!V Spiked Seltzer. Originally launched in 2013, SpikedSeltzer was the first hard seltzer. In 2019, Anheuser-Busch launched a hard seltzer product under the Natural Light Brand. In 2020, Anheuser-Busch introduced Bud Light Seltzers, Bud Light Platinum Seltzers, Social Club Seltzer, and Maha Organic Hard Seltzers. Like the Michelob ULTRA Seltzers, Maha Organic Hard Seltzers are certified organic under the USDA's National Organic Program. Maha Organic Hard Seltzers, however, are not nationally distributed. They are only available in twelve states. Maha Organic Hard Seltzers were certified organic by the USDA in November 2019, and that product launched in March 2020.

Anheuser-Busch launched its line of Michelob ULTRA Hard Seltzer in January 2021. That product currently is available for purchase in forty-nine states. The only state in which Michelob ULTRA Hard Seltzers are not sold is Utah, due to that state's unique regulatory scheme for products such as hard seltzers.

**D.  Defendants' Promotional Materials**

On January 13, 2021, Defendants issued a press release, with the following title:

> Michelob ULTRA Introduces *First National USDA Certified*
> *Organic Hard Seltzer* That's 'As Real As It Tastes' With The
> Launch Of Michelob ULTRA Organic Seltzer.

ECF 23 (Decl. of Daniel C. Pterson), Ex.5 (emphasis added); ECF 17 (Decl. of Ricardo Marques), Ex. 1. The body of that press releases reads, in relevant part:

> Michelob ULTRA Organic Seltzer, *the first-ever national USDA certified organic hard seltzer*, hits shelves nationwide this month with three refreshing flavors–cucumber lime, spicy pineapple and peach pear.
>
> \*    \*    \*
>
> We're kicking off 2021 in a big way by bringing *an innovative, first-of its-kind organic option to the hard seltzer category* for those who enjoy clean and refreshing flavors," said Ricardo Marques, Global Vice President of Michelob ULTRA.

*Id.* (emphasis added). A key focus of this lawsuit concerns representations by Anheuser-Busch, both directly and indirectly, that with its line of Michelob ULTRA Organic Selzers, Anheuser-Busch is "bringing an innovative, first-of its-kind organic option to the hard seltzer category." According to the evidence presented by Suzie's Brewery, this representation and those like it are causing consumers to question whether Suzie's Organic Hard Seltzer really is organic.

On January 24, 2021, Defendants caused to be aired a television commercial for Michelob ULTRA Organic Hard Seltzer during the nationally televised NFL division championship playoff games. The name of that commercial is "Not Playing Around," and the following words were spoken in that commercial:

> Introducing Michelob ULTRA Organic Seltzer. It's six-times filtered. Has 0 grams of sugar. No artificial after taste. *And is the only national USDA Certified Organic Hard Seltzer*. We're not playing around. New Michelob ULTRA Organic Seltzer. As real as it tastes.

ECF 17 at ¶ 10 (emphasis added).

In addition to these direct statements, Anheuser-Busch also appears to be making these statements indirectly, in partnership with social media "influencers." One recent Instagram post by Gideon Akande (getwitwithgiddy) states:

> My friends at @MichelobUltra are known to keep it real and that's no different with the launch of #ULTRAOrganicSeltzer! *It is the first National USDA Organic Seltzer.*

PAGE 11 – TEMPORARY RESTRAINING ORDER

ECF 22 at ¶ 7 (Decl. of Julie A. Smith), Ex. 1 (emphasis added). According to Instagram, this influencer has more than 67,000 followers on Instagram. *Id*. In another recent Instagram post, Tracy G (itstracyg) states:

> This deserves room in your fridge *clears throat* *the first ever USDA National Organic Certified Seltzer* with realass fruit flavors from my people at @michelobultra introducing #ULTRAOrganicSeltzer.

*Id*. at ¶ 8, Ex. 2 (emphasis added).

On January 24, 2021, Defendants also caused to be aired a different television commercial for Michelob ULTRA Organic Hard Seltzer, also televised during the NFL division championship playoff games. The name of this commercial is "Don't Fall for Anything Else." The following words were spoken in this commercial:

> Introducing Michelob ULTRA Organic Seltzer. It's six times filtered. Has no sugar. No artificial aftertaste. And has a nice spicy kick. *And is the only national hard seltzer that is USDA Certified Organic*. Don't fall for anything else. New Spicy Pineapple Michelob ULTRA Organic Seltzer. As real as it tastes.

ECF 17 at ¶ 9 (emphasis added).

On February 3, 2021, Defendants issued another press release. This press release reads, in part, that the Michelob ULTRA Organic Seltzer is:

> the *first-nationally distributed* USDA certified organic hard seltzer[.]

ECF 17 (Decl. of Ricardo Marques), Ex. 2. (emphasis added).

As discussed more fully below, Suzie's Brewery does *not* object to Defendants stating in their television or radio commercials, press releases, or other advertising that Michelob ULTRA Organic Hard Seltzer is the "only national hard seltzer that is USDA certified organic" or is "the *first-nationally distributed* USDA certified organic hard seltzer." *See* ECF 20 at 1 (Plaintiff's Reply). Suzie's Brewery does not contend that statements like these last two cause Plaintiff any

harm. Suzie's Brewery, however, does object to Defendants' statements that Michelob ULTRA

Organic Hard Seltzer is the "only national USDA certified organic hard seltzer," that Michelob

ULTRA Organic Hard Seltzer is the "first-ever national USDA certified organic hard seltzer,"

and that, through Michelob ULTRA Organic Hard Seltzer, Anheuser-Busch is "bringing an

innovative, first-of its-kind organic option to the hard seltzer category." These latter statements

are what this lawsuit is all about.

## DISCUSSION

### A.  Plaintiff's Standing

Defendants cite the Supreme Court's decision in *Lexmark International, Inc. v. Static

Control Components, Inc*., 572 U.S. 118 (2014). In that case, the Supreme Court stated: "We

thus hold that to come within the zone of interests in a suit for false advertising under § 1125(a),

a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id*. at 131-32.

The Supreme Court further noted: "We thus hold that a plaintiff suing under § 1125(a) ordinarily

must show economic or reputational injury flowing directly from the deception wrought by the

defendant's advertising; and that that occurs when deception of consumers causes them to

withhold trade from the plaintiff." *Id*. at 133. As discussed in the next section, the Court finds

that Plaintiff has adequately alleged and has adequately shown a reputational injury flowing

directly from Defendants' allegedly false statements that Defendants' brand of hard seltzer

(Michelob ULTRA) is *the only national USDA Certified Organic Hard Seltzer*.

Invoking *Lexmark*, Defendants also argue:

> Suzie's has not alleged any economic or reputational injury in the
> 44 states where its hard seltzer product is not distributed, nor could
> it. Thus, it has not shown proximate causation and lacks standing
> to pursue a Lanham Act claim directed to any market where its
> product is not sold.

ECF 16 at 31 (Defendants' Opposition). Plaintiff correctly replies that the concept of standing

asks who has a right to sue, which is different from the scope of an appropriate remedy. As the

Supreme Court explained in *Lexmark*:

> Thus, this case presents a straightforward question of statutory
> interpretation: Does the cause of action in § 1125(a) extend to
> plaintiffs like Static Control?

*Lexmark*, 572 U.S. at 129. Further, as Plaintiffs correctly observe, Defendants do not assert that

Suzie's Brewery has no right to sue under the Lanham Act. Thus, Plaintiff has standing, and

*Lexmark* does not assist Defendants.

## B. Application of TRO Factors

### 1. Likelihood of Success on the Merits

As noted previously, to prevail on a false advertising claim under § 43(a)(1) of the

Lanham Act, a plaintiff must prove the following five elements: (1) a false statement of fact by

the defendant in a commercial advertisement about its own or another's product; (2) the

statement actually deceived or has the tendency to deceive a substantial segment of its audience;

(3) the deception is material, in that it is likely to influence the purchasing decision; (4) the

defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been

or is likely to be injured as a result of the false statement, either by direct diversion of sales from

itself to defendant or by a lessening of the goodwill associated with its products. *Southland*, 108

F.3d at 1139. Here, Suzie's Brewery has shown a likelihood of success on the merits.

The Court finds that the following statements by Anheuser-Busch are literally false on

their face: (1) Michelob ULTRA Organic Hard Seltzer is the "only national USDA certified

organic hard seltzer"; (2) Michelob ULTRA Organic Hard Seltzer is the "first-ever national

USDA certified organic hard seltzer"; and (3) through Michelob ULTRA Organic Hard Seltzer,

Anheuser-Busch is "bringing an innovative, first-of its-kind organic option to the hard seltzer

category." Further, as an alternative ruling, the Court also finds that even if these statements were not literally false, they are still likely to mislead, confuse, or deceive consumers. These findings are based, in part, on the undisputed facts that: (a) Suzie's Organic Hard Seltzer was certified organic under the USDA's National Organic Program on June 1, 2020 and entered the market the following month; and (b) Michelob UTLRA Organic Hard Seltzer was certified organic under the USDA's National Organic Program on August 19, 2020 (more than two and a half months *after* Suzie's).[8]

Anheuser-Busch argues that statements representing that Michelob ULTRA Organic Hard Selzer is the only (or the first) "national USDA certified organic seltzer" means simply that it is the only (or the first) USDA certified organic seltzer *that is nationally distributed*. That reading, however, is not reasonable.[9] Because that is not a reasonable reading, the challenged statements are literally false on their face. Even if Defendants' reading were reasonable, however, the challenged statements still are likely to mislead, confuse, or deceive consumers.

The Court makes these findings (the primary finding and the alternative finding) based on the undisputed fact that the word "national" is an integral—and oft-repeated—part of the USDA's national organic certification program, *i.e.*, the National Organic Program. One of the

---

[8] Anheuser-Busch's statements also are literally false because Anheuser-Busch's own brand Maha Organic Hard Seltzers were certified organic under the USDA's National Organic Program in November 2019. Suzie's Brewery, however, does not complain about that aspect of these statements' falsity; nor does that aspect of the statements' falsity appear to cause any harm to Suzie's Brewery.

[9] Because Anheuser-Busch's reading is not reasonable, the statement is not ambiguous. To be ambiguous, a statement must have at least two reasonable alternative meanings. *See Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206 (9th Cir. 1999), *opinion amended on denial of reh'g*, 203 F.3d 1175, 1210 (9th Cir. 2000) ("The fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous; it is only ambiguous if *reasonable* people could find its terms susceptible to more than one interpretation." (emphasis added)).

main purposes of that National Organic Program was to create a *national*, unified standard for organic labelling, designation, and advertising.

As additional support for the Court's findings both of literal falsity and the alternative finding of likely to mislead, the Court notes that the word "national" appears immediately before the words "USDA organic certified hard seltzer" and there are no commas separating the adjectives modifying "seltzer." In English, most adjectives are prepositive modifiers, meaning they come before the thing (or noun) they modify. Multiple adjectives that all modify a single (or head) noun are known as "coordinate adjectives" and generally are separated by commas or the word "and." *See* Bryan A. Garner, *The Chicago Guide to Grammar, Usage, and Punctuation* 69 (2016) (*Chicago Guide*) ("A coordinate adjective is one that appears in a sequence with one or more related adjectives to modify the same noun."); Bryan A. Garner, *Garner's Modern English Usage* 986 (4th ed. 2016) (same).

In the challenged statements, several adjectives, including "national," "USDA certified," "organic," and "hard," all appear before the word "seltzer." Anheuser-Busch did not use commas, or the word "and," to separate these adjectives in the challenged statements. Further, many of these words make no sense, by themselves, as a modifier of "seltzer." There is no such thing as a "national seltzer." A brand of seltzer may be distributed nationally, as is Defendant's product, but the word "national" by itself is not reasonably understood as a modifier of "seltzer." In addition, the USDA does not certify plain seltzer (*i.e.*, carbonated water). Also, seltzer cannot be organic. It can, however, be "hard" (*i.e.*, contain alcohol). And hard seltzer can be certified organic (*i.e.*, the corn or other grain that makes the alcohol is organic). And the organic certification can be made under the USDA National Organic Program. Indeed, pursuant to OFPA, only if a product is certified under the USDA National Organic Program can it be

lawfully advertised in the United States as "organic." Thus, the adjectives used in the challenged statements are not coordinate adjectives; they do not all modify the noun "seltzer."[10]

Instead, the entire phrase "national USDA certified organic" that precedes "hard seltzer" appears as one phrasal adjective. A phrasal adjective, also known as a compound modifier, "functions as a unit to modify a noun." *See Chicago Guide* 69; *Garner's Modern English Usage* 986. Thus, the words "national USDA certified organic hard" is a phrasal adjective (or compound modifier) that functions as a unit modifying "seltzer." rather than as coordinate adjectives.

Anheuser-Busch states that it "has spent roughly $590,000.00 developing, producing, and distributing" the advertisements challenged by Suzie's Brewery. It is highly unlikely that the word "national" was placed where it was as the result of careless copywriting. Thus, there is no reason to conclude that "national" modifies anything but "USDA certified organic"—with specific reference to the National Organic Program of the USDA. For all these reasons, Plaintiff

---

[10] During oral argument, Anheuser-Busch agreed that the adjectives in the challenged statements are not coordinate adjectives and argued that, instead, they are cumulative adjectives. This argument also does not assist Anheuser-Busch. "[C]oordinate modifiers take a comma between them, whereas cumulative modifiers do not. . . . [A] coordinate modifier [is] one that 'describes the noun independently,' whereas a cumulative modifier 'describes the combination of the next modifier plus the noun it modifies.' . . . For cumulative modifiers to do their job, they need to be touching, just like their counterparts in a Newton's pendulum. Placing a comma between them disrupts a sentence's kinetics. By contrast, coordinate modifiers leap over everything between them and the head noun, striking the headword directly." When to Place a Comma between Prenominal Modifiers, https://wilcoxediting.com/projects/when-place-comma-between-prenominal-modifiers (last visited February 9, 2021). Thus, even viewing the word "national" as a cumulative modifier, all that means is that it modifies "USDA certified" and not "seltzer." This further supports Plaintiff's position.

has shown a reasonable likelihood of success on the merits regarding the first of the five *Southland* elements.[11]

Regarding the second element, Plaintiff has shown a reasonable likelihood of success in showing that the challenged statements either deceived consumers or at least have the tendency to deceive a substantial segment of consumers. First, courts recognize that there is a presumption that attaches to a literally false statement. *See, e.g.*, *Time Warner Cable*, 497 F.3d at 153; *see also FLIR Sys., Inc. v. Sierra Media, Inc.*, 903 F. Supp. 2d 1120, 1129 (D. Or. 2012). Second, Plaintiff has submitted evidence showing that Anheuser-Busch's challenged statements both have deceived and have a tendency to deceive a consumer audience.

Almost immediately after Anheuser-Busch's false advertisement that aired during the January 24, 2021 NFL championship playoff game, several consumers contacted Suzie's Brewery, questioning the veracity of Suzie's organic certification. *See* ECF 6, ¶¶ 2-3 (Decl. of Kris Carlisle); ECF 7, ¶¶ 2-33 (Decl. of John Lipp); ECF 8, ¶¶ 2-3 (Decl. of Ryan Becker); *see also* ECF 4, ¶ 7 (Decl. of Chris Barhyte). Consumers Carlisle, Lipp, and Becker, reached out to Suzie's Brewery because after seeing Anheuser-Busch's commercial stating that Michelob

---

[11] Anheuser-Busch refers to Judge Richard Posner's decision for the court in *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500 (7th Cir. 2009). In that case, Judge Posner noted:

> What the cases mean when they say that proof of literal falsity allows the plaintiff to dispense with evidence that anyone was misled or likely to be misled is that the seller who places an indisputably false statement in his advertising or labeling probably did so for a malign purpose, namely to sell his product by lies, and if the statement is false probably at least some people were misled, and since it was a lie why waste time on costly consumer surveys?

*Plough Healthcare*, 586 F.3d at 512. Judge Posner continued: "The proper domain of 'literal falsity' as a doctrine that dispenses with proof that anyone was misled or likely to be misled is the patently false statement that means what it says to any linguistically competent person, unlike the examples we have given." *Id*. at 513. This does not assist Anheuser-Busch.

ULTRA Hard Selzer is the "only national USDA certified organic hard seltzer," and they questioned whether Suzie's Organic Hard Seltzer was in fact certified organic.

In addition, the Sales Director for Suzie's Brewery, Bandon Krigbaum, was recently contacted by one of the distributors of Suzie's Organic Hard Seltzer. The distributor asked whether Suzie's Organic Hard Seltzer was "really USDA-certified organic" after that distributor saw a commercial stating that Michelob ULTRA was "the first and only USDA certified organic hard seltzer." ECF 5, ¶ 2 (Decl. of Bandon Krigbaum). The fact that a presumably knowledgeable beverage distributor could be misled by Anheuser-Busch's commercial is additional circumstantial evidence that less sophisticated consumers were and can be deceived.

Finally, Plaintiff submitted a news story appearing in *USA Today* on January 27, 2021. That story contains the following statement:

> Michelob Ultra, another Anheuser-Busch brand, touted its recent release as the first USDA-certified organic hard seltzer: Michelob Ultra Organic Seltzer.

ECF 23 at 40. Similarly, the fact that a presumably knowledgeable journalist could be misled by Anheuser-Busch's representations is additional circumstantial evidence that less sophisticated consumers were and can be deceived.

Regarding the third *Southland* element, Plaintiff has shown a likelihood of success in demonstrating that the falsity of the challenged statements is material. As shown by the three consumer declarations, the declaration describing the comments from the distributor, and the *USA Today* article submitted by Plaintiff (and cited above), whether a product is USDA certified organic is likely to influence the purchasing decision of at least a nontrivial number of consumers. In addition, the parties have expended significant resources to make a product (hard seltzer) that qualified to receive USDA certification as organic under the USDA's National Organic Program. This also shows materiality. Finally, when Anheuser-Busch states that it is the

only such hard seltzer certified organic under the National Organic Program, this deprives Suzie's Brewery of the benefit of its expenditures, both to obtain national USDA organic certification and to advertise its product as having USDA national organic certification. Presumably, Anheuser-Busch would not highlight this feature of its product in its advertising unless it believed that doing so would promote sales. That is sufficient to show a likelihood of success on the third *Southland* element, materiality. Regarding the fourth *Southland* element, Anheuser-Busch does not deny that it caused the allegedly false statements at issue to enter interstate commerce.

Finally, regarding the fifth *Southland* element, Plaintiff has shown that it is likely to be injured as a result of the challenged false or misleading statements, either by direct diversion of sales from itself to Defendants or by a lessening of the goodwill associated with its products. This comes both from the presumption afforded to literally false statements, as well as from the evidence of the three consumer declarations, the declaration describing the comments from the distributor, and the *USA Today* article submitted by Plaintiff, all discussed previously.

### 2. Likelihood of Irreparable Harm

As previously noted, the Lanham Act is codified at 15 U.S.C. §§ 1051, *et seq*. That is Chapter 22 of Title 15 of the United States Code, captioned "Trademarks." Subchapter III is captioned "General Provisions." Section 43(a) is found in Subchapter III, at 15 U.S.C. § 1125. Also found in Subchapter III is 15 U.S.C. § 1116, captioned "Injunctive Relief." In relevant part, that section reads:

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. *A plaintiff seeking any such injunction shall be*

> *entitled to a rebuttable presumption of irreparable harm upon a*
> *finding of a violation identified in this subsection in the case of a*
> *motion for a permanent injunction or upon a finding of likelihood*
> *of success on the merits for a violation identified in this subsection*
> *in the case of a motion for a preliminary injunction or temporary*
> *restraining order.*

15 U.S.C. § 1116(a) (emphasis added).[12] Because Plaintiff has shown a likelihood of success on

the merits on it motion for a temporary restraining order to enjoin Defendants' violation of 15

U.S.C. § 1125(a), Plaintiff is entitled to the benefit of the rebuttable presumption provided in

§ 1116(a). Anheuser-Busch has not rebutted that presumption. Accordingly, the Court finds that

Plaintiff has shown a likelihood of irreparable injury.[13] In addition, even without this rebuttable

presumption, Plaintiff's evidence of three consumer declarations, the declaration describing the

---

[12] The italicized portion of § 1116(a) was added by Congress effective December 27, 2020 in the Trademark Modernization Act of 2020, which was part of the Consolidated Appropriations Act, 2021. *See* Pub. L. 116-260, § 226, 134 Stat. 2208 (2020).

[13] In *eBay Inc. v. MercExchange, L.L.C*., 547 U.S. 388 (2006), the Supreme Court rejected a judicially created presumption of irreparable injury in the context of the Patent Act. The Supreme Court expressly noted: "Nothing in the Patent Act indicates that Congress intended such a departure [from well-established principles of equity that must be shown before injunctive relief may be ordered]." *Id*. at 391-392. The Supreme Court's decision in *eBay* led several circuit courts to reject such presumptions in Lanham Act cases. *See, e.g., Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 216 (3d Cir. 2014), *holding modified by Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017); *N. Am. Med. Corp. v. Axiom Worldwide, Inc*., 522 F.3d 1211, 1227-28 (11th Cir. 2008). As of December 27, 2020, the newly added text in § 1116(a) provides the statement of congressional authorization that the Supreme Court found lacking in *eBay. See generally Mohamad v. Palestinian Auth*., 566 U.S. 449, 457 (2012) ("It is true that 'Congress is understood to legislate against a background of common-law adjudicatory principles.' But Congress plainly can override those principles." (quoting *Astoria Fed. Sav. & Loan Assn. v. Solimino*, 501 U.S. 104, 108-09 (1991) (citations omitted); 15 Am. Jur. 2d *Common Law* § 15 ("Congress has the power to modify or abolish common-law rights or remedies.").

PAGE 21 – TEMPORARY RESTRAINING ORDER

comments from the distributor, and the *USA Today* article submitted by Plaintiff, discussed

previously, are themselves sufficient to show a likelihood of irreparable harm.[14]

### 3. Balancing the Equities

A party does not have an equitable interest in disseminating a false advertisement. *See CJ*

*Prods. LLC v. Snuggly Plushez LLC,* 809 F. Supp. 2d 127, 149 (E.D.N.Y. 2011). Moreover,

Anheuser-Busch's Vice President for Michelob ULTRA explains that the use of the word

"national" in the challenged statements were only intended to communicate that Michelob

ULTRA organic hard seltzers were the first product of its kind to be "nationally distributed and

nationally available." He explained:

> The reference in "Don't Fall for Anything Else" to "the only
> national hard seltzer that is USDA Certified Organic" and the
> reference in "Not Playing Around" to "the only national USDA
> Certified Organic Hard Seltzer" *both refer to ULTRA Seltzer being
> the first nationally distributed and nationally available USDA
> organic hard seltzer.*

ECF 17, ¶ 11 (Decl. of Ricardo Marques) (emphasis added).

Based on Mr. Marques's declaration, the job of balancing the equities becomes rather

easy. The Court will *not* prohibit Anheuser-Busch from advertising that communicates that

Michelob ULTRA organic hard seltzers are the only (or first) product of its kind to be nationally

distributed and nationally available. Because Mr. Marques explains that this is all that Anheuser-

Busch sought to do in the first place, nothing in the Court's granting of a temporary restraining

---

[14] Defendants correctly observe that Plaintiff did not submit any survey evidence. Survey
evidence, correctly obtained, may be helpful. *See generally* Kenneth A. Plevan, *Recent Trends in
the Use of Surveys in Advertising and Consumer Deception Disputes*, 15 Chi.-Kent J. Intell.
Prop. 49 (2015). But the Court is unaware of any case law requiring that survey evidence be
submitted, especially in support of a TRO, where time often is of the essence.

order will interfere with Anheuser-Busch's legitimate business objectives. Thus, the "balance of the equities" tips, indeed tips sharply, in favor of Suzie's Brewery.

### 4. Public Interest

A TRO or preliminary injunction is in the public interest whenever a plaintiff has established a reasonable likelihood of establishing that the defendant has engaged in false advertising in violation of the Lanham Act. That is because the "Lanham Act is itself a public interest statute intended to protect the consuming public and competitors from false and deceiving statements which a company chooses to utilize in advertising its goods or services." *U-Haul Int'l, Inc. v. Jartran, Inc.*, 522 F. Supp. 1238, 1242 (D. Ariz. 1981), *aff'd*, 681 F.2d 1159 (9th Cir. 1982); *see also Lexmark*, 572 U.S. at 129 (stating that the purpose of the Lanham Act's prohibition against false advertising is to protect the public interest in preventing "unfair competition"). In short, the public has an interest in receiving accurate information and avoiding confusion in the marketplace. *See Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1321 (11th Cir. 2010).

## C. Bond

Anheuser-Busch states that it would cost "at least $37,900 to produce and distribute replacement advertising necessary to appropriately support the nationwide launch of a new product on the scale that the ULTRA Seltzers are being released." ECF 17, ¶ 30 (Decl. of Ricardo Marques). Anheuser-Busch, however, does not provide any detail or description for how it arrived at that figure. All that Anheuser-Busch needs to do is change every instance of its advertising statements that Michelob ULTRA Hard Seltzer is "the only" (or "the first") "national USDA certified organic hard seltzer" to read that Michelob ULTRA Hard Seltzer is the only (or the first) USDA certified organic hard seltzer distributed nationally. That cannot be too difficult or expensive, and Anheuser-Busch provides no information about how much that would cost.

Further, according to Anheuser-Busch, that is all that it meant to communicate in the first place. *See* ECF 17, ¶ 11 (Decl. of Ricardo Marques). Further, if Anheuser-Busch prefers, because it is less expensive, it may simply delete the words "only" and "first." There is nothing false about describing Michelob ULTRA organic hard seltzers as a "national USDA certified organic hard seltzer." That would appear to be even less expensive. The choice will be for Anheuser-Busch to make. A security bond undertaken by Plaintiff in the amount of $5,000 will be sufficient.

**D.  Conclusion**

For the reasons stated, the Court grants Plaintiff's Motion for Temporary Restraining Order (ECF 3) as follows:

**TEMPORARY RESTRAINING ORDER**

1.      Defendants may not continue to advertise, directly or indirectly, or in any manner (including, but not limited to, purchasing television or radio commercials or print, internet, or social media advertisements, issuing press releases, paying social influencers, or the like) the false and deceptive claim that Michelob ULTRA Hard Seltzer is the only or the first national USDA certified organic hard seltzer, or words to that effect. Defendants may, however, continue to advertise, if truthful, that Michelob ULTRA Organic Hard Seltzer is the only or first USDA certified organic hard seltzer distributed nationally, or words to that effect.

2.      Plaintiff shall post a security bond in the amount of $5,000 within three days of the date of this Order.

3.      The Court authorizes reasonable and mutual expedited discovery so that the parties can be fully prepared to present all relevant facts and legal issues at a preliminary injunction hearing. The parties shall promptly confer and, not later than February 15, 2021, propose to the Court a stipulated schedule (or separately proposed schedules if the parties cannot agree) for briefing and hearing on whether the Court should issue a preliminary injunction.

4.      This Order expires twenty-eight (28) days after entry and will not be extended by the Court absent stipulation of the parties.

**IT IS SO ORDERED**.

DATED this 9th day of February, 2021 at 12:15 p.m.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge